Filed 9/12/22  P. v. Vaughan CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>LUKE VAUGHAN,<br><br>　　　Defendant and Appellant. | F082468<br><br>(Super. Ct. No. LF012948B)<br><br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Brian M. McNamara, Judge.

Denise M. Rudasill, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Kari Mueller, Lewis A. Martinez and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]　　　Before Franson, Acting P. J., Smith, J. and DeSantos, J.

# INTRODUCTION

On January 27, 2021, a jury convicted defendant Luke Vaughan of attempted first degree burglary (Pen. Code, §§ 460, subd. (a), 664, count 1)[1] and found true the allegation a nonparticipant was present during the burglary (§ 667.5, subd. (c)(21)); conspiracy to commit first degree burglary (§§ 182, subd. (a)(1), 460, subd. (a), count 2); receiving stolen property (§ 496, subd. (a), count 5); and petty theft (§ 488, count 6).[2] The jury acquitted defendant of first degree burglary (§ 460, subd. (a), count 4). As to count 2, the trial court sentenced defendant to the aggravated term of six years. As to count 1, the trial court sentenced defendant to the aggravated term of three years, but stayed the sentence pursuant to section 654. As to counts 5 and 6, the trial court sentenced defendant to 180 days' custody to be served concurrent with count 2.

On appeal, defendant contends: (1) the trial court erred by admitting his coparticipant's (Campos) statement as an adoptive admission exception to the hearsay rule; (2) he was improperly convicted of both receiving stolen property (§ 496, subd. (a), count 5) and petty theft (§ 488, count 6); (3) this matter should be remanded for resentencing to allow the trial court to exercise its new discretion under Assembly Bill No. 518 (2021–2022 Reg. Sess.) (Assembly Bill 518); and (4) the trial court erred by allowing the People to amend count 1 (§§ 460, subd. (a), 664) to add a "nonparticipant present" allegation (§ 667.5, subd. (c)(21)) because section 667.5 does not apply to attempted violent felonies. The People concede: (1) defendant was improperly convicted of both receiving stolen property and petty theft and therefore his conviction as to count 5 should be vacated; (2) Assembly Bill 518 applies retroactively to defendant's case and

---

[1]    Subsequent statutory references are to the Penal Code, unless otherwise indicated.

[2]    Prior to the jury trial, the trial court granted the People's motion to dismiss count 3 (§ 212.5, subd. (c)) and count 7 (Health & Saf. Code, § 11364) in the furtherance of justice. For the purposes of trial only, the trial court renumbered count 4 to count 3, count 5 to count 4, and count 6 to count 5.

therefore this matter should be remanded for resentencing; and (3) it was error for the People to amend count 1 to add a "nonparticipant present" allegation.

We accept the People's concessions, vacate the sentence, and remand for resentencing. Moreover, we dismiss defendant's conviction as to count 5 and dismiss the "nonparticipant present" allegation as to count 1. In all other respects, we affirm the judgment.

## STATEMENT OF FACTS

Paulina V. testified with the aid of a "Mixteco" language interpreter. Paulina lived with her sister, partner, and newborn child in an apartment in Taft. During this time, Paulina worked six days a week between 5:00 a.m. and 5:00 p.m.

On August 5, 2020, Paulina left for work at 5:00 a.m. and left the door unlocked because her brother was at the home. At 5:00 p.m., Paulina came home from work and noticed the apartment door was unlocked and all their clothes were on the floor. No one had permission to be inside the apartment besides her partner, brother, sister, and child. Car keys, a car title, and 4,000 Mexican pesos were missing. They called 911, but law enforcement never arrived.

The next day, on August 6, 2020, Paulina stayed home from work to care for her sick child. Paulina was alone with her child inside the apartment when she heard a noise through the door and saw a male with a tattoo, later identified as Jaime Campos, standing outside.[3] Paulina looked through the window and saw Campos "knocking [on] the door" and another male, later identified as defendant, trying to get into a gray car. Campos then started knocking on the back door. All the while, defendant was still looking through the car. Paulina then called 911 as the incident was occurring. Paulina looked through the

---

[3] Kern County Deputy Rosalba Zamarripa testified she was unaware of whether defendant had any tattoos. During Zamarripa's testimony, defendant stood up and she testified she could not observe any tattoos on defendant's person.

3.

window and saw Campos grab her jumper cables located near her front door.[4] Subsequently, Paulina observed Campos give defendant the jumper cables.

Kern County Sheriff deputies arrived 10 minutes after Paulina called 911. Zamarripa testified she is fluent in the Spanish language and arrived at the apartment to investigate a possible burglary. Zamarripa arrived on scene and observed Campos, defendant, and Paulina. Paulina was pointing at both Campos and defendant. Paulina "was visibly shaken and had tears in her eyes." Defendant was subsequently located near a blue, four-door compact car with its tailgate open.

At this point, Zamarripa spoke with Paulina in Spanish. Paulina stated she was in the upstairs bedroom with her child when she heard the doorknob moving and the front door being "jimmied like … somebody was trying to come into the residence." She then looked through the window and observed defendant and Campos at her front door. Paulina specifically stated, "[T]he American, the white man," who she later identified as defendant, was trying to open her front door. Campos was identified as "El Mexicano." Subsequently, Paulina set her baby down and tried to keep the door shut by holding onto the doorknob with her right hand and holding onto the door frame with her left hand. At this point, defendant and Campos kicked the door and the "whole door was coming out from the frame." Defendant and Campos then jumped the fence and "started to push against the backdoor" and tried to jimmy it open. Eventually, defendant and Campos stopped, which allowed Paulina to call 911. However, after Paulina called 911, "the front door started to—the doorknob started to jiggle again and the door started to move again." She looked out the window and saw both defendant and Campos standing at the front door. Both defendant and Campos eventually walked away and defendant looked at

---

**4**    Paulina previously testified the jumper cables were located near the back of the apartment.

Paulina and grabbed a set of jumper cables located on the front porch. Deputies eventually arrived on scene and detained both defendant and Campos.

Zamarripa arrested both defendant and Campos. Zamarripa searched defendant but did not locate any Mexican pesos, car keys, or a car title on his person. Deputy Amanda Plugge arrived on scene and located jumper cables near a vehicle where defendant was located. Defendant stated he owned the vehicle. Moreover, a total of nine Mexican pesos were located, which included three pesos found in a trailer located on property owned by his parents, and six pesos found inside a backpack located inside the vehicle. Defendant took ownership of the vehicle in which the backpack was located. Deputies showed Paulina the Mexican pesos and she stated the pesos belonged to her.[5]

Zamarripa then placed defendant and Campos inside her patrol vehicle. Defendant was seated directly behind the driver seat and Campos was seated behind the front passenger seat. While in the patrol vehicle, Campos motioned toward defendant and told Zamarripa, "[M]a'am, I'm sorry, ma'am. We were in the apartment yesterday and he was with me." Defendant responded, "[D]on't tell her that. It's conspiracy. That's a felony." While inside the vehicle, Zamarripa did not speak to either defendant or Campos, nor did she respond to either statement.

### DISCUSSION

**I.** **Campos's Statement Qualified as an "Adoptive Admission" Exception to the Hearsay Rule.**

Defendant contends the trial court erred in admitting Campos's statement as an adoptive admission. Specifically, defendant argues (1) Campos's statement did not qualify as an adoptive admission, but rather constituted inadmissible hearsay; (2) substantial evidence did not support the trial court instructing the jury as to

---

**5** Paulina specifically stated the located Mexican pesos belonged to her because "4,000 of them had been stolen." Deputies never located the remaining missing pesos.

CALCRIM No. 357; (3) the trial court erred in denying trial counsel's request to instruct the jury as to a modified version of CALCRIM No. 357 because defendant relied on his Fifth Amendment right to remain silent; (4) the probative value of Campos's statement was substantially outweighed by its prejudicial effect; and (5) the statement's admission violated his Sixth Amendment right to confront witnesses.

We conclude the trial court properly admitted Campos's statement and its admission did not violate defendant's federal constitutional rights. Additionally, even if the trial court erred, defendant was not prejudiced under either the *People v. Watson* (1956) 46 Cal.2d 818, 836 or *Chapman v. California* (1967) 386 U.S. 18, 24 standards.

## A. Additional Factual Background

The People moved to admit two postarrest statements made by defendant:

> "The first set of statements are when both Campos and [d]efendant … were arrested and placed into the rear of one of the deputy's patrol cars. As they were being transported to Taft jail, Campos, without questioning, told the deputy, 'Mam, I am sorry, Mam. We were in the apartment yesterday and we stole stuff' while motioning to [d]efendant … who was seated next to him. Defendant … then stated, 'Don't tell her that, they'll charge us with conspiracy. That's a felony.'

> "The second set of statements were made while at the Taft jail. One of the deputies heard [d]efendant … tell Campos[,] 'He owed him.' Campos responded with, '[W]hat for? Snitching on us?['] Defendant … then repeated, '[Y]ou owe me.' "

The trial court then held a hearing pursuant to Evidence Code section 402. Zamarripa testified on August 6, 2020, she was dispatched to a residence regarding a possible burglary. She arrived on scene and placed both defendant and Campos under arrest. Zamarripa did not advise defendant of his *Miranda*[6] rights. Defendant was seated directly behind the driver's seat and Campos was seated directly behind the passenger seat. While on route to the Taft jail, Campos nodded toward defendant and told

---

[6] *Miranda v. Arizona* (1966) 384 U.S. 436.

6.

Zamarripa, " 'Ma'am, I'm sorry, ma'am. Me and him were in the apartment yesterday.' " Defendant responded, " 'Don't tell her that. They'll charge us with conspiracy. It's a felony.' " Subsequently, while at the Taft jail, defendant told Campos, " 'You owe me.' " Campos responded, " 'Why? Cuz I snitched? I need to stop doing drugs. This is f[***]ed up.' " All these statements were unsolicited.

After hearing arguments, the trial court ruled:

> "Evidence Code 1221 the adoptive admission to apply a direct accusation. So many words. It's not essential. To warrant admissibility, it is sufficient that the evidence supports a reasonable inference. An accusatory statement was made under circumstance affording a fair opportunity to deny the accusation where the defendant's conduct constitutes an adoptive admission becomes a question for the jury to decide.

> "The evidence is as follows: Deputy Zamarripa had informed both defendants as to the charges underscoring their arrests. As Evidence Code 1221 requires certain things statement adopted by the party, statement adopted seems to call for a reply. Party heard and understood the statement. Adoption is a fair inference from all the circumstances. In the police vehicle Mr. Campos, ma'am, I'm sorry. Ma'am, we were in the apartment yesterday and he was with me. Mr. Campos nodded in the direction of [defendant]. [Defendant]—don't tell her that. They will charge us with conspiracy. That's a felony.

> "This evidence is relevant against [defendant] and offered by the prosecution against the defendant. The defendant's statement[s] don't tell her that they—don't tell her that. They will charge us with conspiracy. That's a felony is not hearsay. It is a personal admission. Party's own statement offered against him. Mr. Campos—ma'am, I'm sorry. Ma'am, we were in the apartment yesterday and he was with me is not … hearsay either. It is not offered to prove the truth of the matter asserted. The defendant's response gives rise to the question what is he adopting?

> "To give meaning to the defendant's conduct and statement, we must refer to the statement made by Mr. Campos. Mr. Campos's statement is not in the picture for its truth but only to show what he said—what was said so that we can understand [defendant]'s words and actions. Mr. Campos's statements applies total meaning to [defendant]'s statement. The only statement being offered for the truth is the defendant's.

7.

"In light of Mr. Campos's statement, the defendant's response has an implied clause at the end. The defendant's response is yes, I was in the apartment[] yesterday with Mr. Campos. In this context [defendant]'s statement is not hearsay because it is a party's own statement offered against him. Mr. Campos's statement is not hearsay because it is not offered to prove the truth of the matter asserted rather it bec[a]me part of the defendant's admission.

"The above reasoning the evidence provided by the D.A. is admitted as to an adoptive admission.

"As to the police station [defendant]'s statement you owe me are irrelevant and they will not be allowed.

"Limited instruction, the Court will give the following:
Mr. Campos's statement is not received for the purpose of proving its truth but only to explain the conduct of [defendant] in the face of it. Thank you."

At trial, the relevant line of questioning occurred between the prosecutor and Zamarripa:

"[Prosecutor]: Okay. Now as a part of that investigation, was the defendant arrested?

"[Zamarripa]: I arrested him, yes.

"[Prosecutor]: Okay. Was Mr. Campos arrested?

"[Zamarripa]: Yes.

"[Prosecutor]: Okay. Now, did you personally you, yourself, inform the defendant of why he was being arrested?

"[Zamarripa]: Yes.

"[Prosecutor]: Okay. And was that—did you inform the defendant at the same time you informed Mr. Campos?

"[Zamarripa]: Yes.

"[Prosecutor]: Okay. And what, if anything, did you tell them they were being arrested for?

"[Zamarripa]: I told them they were being arrested for conspiracy and burglary.

8.

"[Prosecutor]:  For which burglary?

"[Zamarripa]:  The burglary from the jumper cables for that day and for the money from the previous burglary the previous day.

"[Prosecutor]:  Okay.  And then you said conspiracy?

"[Zamarripa]:  Yes.

"[Prosecutor]:  Okay.  Now, did you also personally transport the defendant and Mr. Campos?

"[Zamarripa]:  Yes.

"[Prosecutor]:  Okay.  Now, was that in your patrol car?

"[Zamarripa]:  Yes.

"[Prosecutor]:  Who all was in your patrol car as you are transporting the defendant and Mr. Campos?

"[Zamarripa]:  Just us three.

"[Prosecutor]:  Okay.  You, Mr. Campos, and the defendant?

"[Zamarripa]:  Yes.

"[Prosecutor]:  Okay.  Now, can you describe where the defendant was seated in your patrol vehicle?

"[Zamarripa]:  He was seated directly behind my driver side in the rear seat.

"[Prosecutor]:  And then Mr. Campos?

"[Zamarripa]:  He was seated on the passenger side.

"[Prosecutor]:  Okay.  Backseat passenger side?

"[Zamarripa]:  Yes.

"[Prosecutor]:  Not like sitting in front with you?

"[Zamarripa]:  No.

"[Prosecutor]:  Okay.  Now, while en route, were you personally speaking with the defendant?

9.

"[Zamarripa]: No.

"[Prosecutor]: Were you personally speaking with Mr. Campos?

"[Zamarripa]: No.

"[Prosecutor]: Okay. Had you posed any sort of question to the defendant?

"[Zamarripa]: No.

"[Prosecutor]: To Mr. Campos?

"[Zamarripa]: No.

"[Prosecutor]: Okay. Now, during your drive with the defendant and Mr. Campos, were any statements made?

"[Zamarripa]: Yes.

"[Prosecutor]: Okay. Now, can you tell the jury who—what was stated.

"THE COURT: Ladies and gentlemen, I've got to read you something at this point—well, first of all who made the statement and then I'll make it more applicable to the jury. [¶] … [¶]

"[Prosecutor]: Who made the initial statement?

"[Zamarripa]: Mr. Campos.

"THE COURT: Given that, ladies and gentlemen, I've got to give you a limiting instruction. This is a direction from the Court at this time. Mr. Campos's statement which you are allowed to hear is not received for the purpose of proving its truth but only to explain the conduct of [defendant] in the face of that statement. Okay. And you'll get a jury instruction on that issue as well and take care of that when we do the jury instructions, ladies and gentlemen.

"With that, back to [the prosecutor].

"[Prosecutor]: Thank you, Your Honor. [¶] … [¶]

"[Prosecutor]: So you said Mr. Campos made a statement.

"Let me take a step back. Prior to Mr. Campos making a statement to you, had you said anything to elicit a response or any sort of a statement?

10.

"[Zamarripa]:  No.

"[Prosecutor]:  Okay.  Now, what if anything did Mr. Campos state?

"[Zamarripa]:  Mr. Campos said, ma'am, I'm sorry, ma'am.  We were in the apartment yesterday and he was with me.  And he motioned over to his left shoulder.

"[Prosecutor]:  Okay.  And would the record reflect that the witness has used her head in a sort of sideways you-type motion.

"THE COURT:  As indicated way to the left.

"[Prosecutor]:  Yes.

"THE  COURT:  Thank you.  [¶] … [¶]

"[Prosecutor]:  Now, when Mr. Campos said we were in the apartment yesterday, the day you were transporting them that was August 6th?

"[Zamarripa]:  Yes.  [¶] … [¶]

"[Prosecutor]:  Now, you said he was pointing with his head that he was with me.  Who was Mr. Campos, I guess, motioning towards?

"[Zamarripa]:  [Defendant].

"[Prosecutor]:  Again, it was just them two in the backseat?

"[Zamarripa]:  Yes.

"[Prosecutor]:  Okay.  Now, after Mr. Campos made that statement to you, did you say anything?

"[Zamarripa]:  No.

"[Prosecutor]:  Did you make any statements back?

"[Zamarripa]:  No.

"[Prosecutor]:  Did you pose any question?

"[Zamarripa]:  No.

"[Prosecutor]:  Now, what if anything did the defendant do in response to Mr. Campos's statement.

11.

"[Zamarripa]: He said don't tell her that. It's conspiracy. That's a felony.

"[Prosecutor]: Okay. So he didn't remain silent?

"[Zamarripa]: No.

"[Prosecutor]: Okay. Did he deny what Mr. Campos had stated?

"[Zamarripa]: No."

During the jury instruction conference, trial counsel put on the record the trial court denied her request "that there … be some mention as to [defendant's] Fifth Amendment rights to remain silent as one of the circumstances and the Court is deferring to the jury to make their own inference." The trial court articulated:

> "I want to clarify 357 and then, [prosecutor], you may reply. 357 is included. That's included period. Part of that says the defendant would under all cir—all the circumstances—actually I've denied the statement if he thought it was not true. How you discussed that is then to be discussed.

> "The jury decides as to adoptive admission. The Court is not stopping any counsel from discussing, presenting facts for the jury to decide this 357. It is not doing that. We don't—we're not asking them to make any legal conclusions. There is a difference between the two. They did—they decide the facts in the case not legal conclusions. So we can describe what happened, the circumstances that apply to how this was accepted by the Court as an adoptive admission to be presented for the jury to decide. That's where we are at the moment and within the context of 357 as to each element."

The prosecutor argued, "In this particular case there is no inference based on the defendant's silence. It was the defendant's words that he actually spoke that are being used as an adoptive admission not his silence."

Accordingly, the trial court instructed the jury with CALCRIM No. 357, as follows:

> "If you conclude that someone made a statement outside of court that tended to connect the defendant with the commission of the crime and the defendant did not deny it, you must decide whether each of the following is true:

12.

"One, the statement was made to the defendant or made in his presence. The defendant heard and understood the statement. Three, the defendant would under all the circumstances naturally have denied the statement if he thought it was not true. And, four, the defendant could have denied it but did not.

"If you decide that all of these requirements have been met, you may include that the defendant admitted the statement was true. If you decide that any of these requirements have not been met, you must not consider either the statement or the defendant's response for any purpose."

During closing argument, the prosecutor referenced Campos's statement and defendant's response:

"Now, Deputy Zamarripa told you that she was the transporting deputy but if you recall she transported both the defendant and Mr. Campos. She told you that the defendant was seated immediately behind her and Mr. Campos was in the rear right passenger seat.

"As they are being transported to Taft substation, Mr. Campos states ma'am, I'm sorry, ma'am. We were in the apartment yesterday. He was with me while nodding to the defendant. Now, the defendant responds with don't tell her that. That's—they'll charge us with conspiracy. That's a felony. Okay. He doesn't deny the statement, doesn't say I wasn't there. He knows what apartment Mr. Campos is referring to. He knows exactly what Mr. Campos is saying yet he does not deny that as true. [¶] … [¶]

"Circumstantial evidence okay. Again inside that vehicle while they are being transported—by they I mean defendant and Mr. Campos, Mr. Campos makes that statement I'm sorry, ma'am. We were in the apartment yesterday. He was with me. Now, the defendant did not deny that statement. He heard that statement, understood that statement, didn't deny it. Circumstantial evidence that the defendant was inside the apartment."

Defendant's trial counsel responded:

"[The prosecutor] keeps focusing on that statement that was made in the back of the car. Remember that? When he was being transported in cuffs to the jail in the back of a patrol car. [¶] … [¶]

"The Court instructed you not to take Mr. Campos's statement for the truth but rather to explain [the defendant]'s reaction to what was stated. You know when you're in the back of a patrol car, in cuffs, getting

13.

transported to jail and the other person who was arrested next to you tries to implicate you in a burglary the day before and you tell them to shut up, don't tell her that, that's not you not denying that statement. That's not you—that's not [the defendant]'s admission that he was culpable in any way about what happened the day before.

"All he said while he is sitting in the back of a patrol car being accused of being there the day before to tell Mr. Campos don't tell her that. It's a conspiracy. They'll charge us with a felony. That's all he said. That is all the evidence that you have against [the defendant]."

## B.    Applicable Law

"[E]vidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated" is inadmissible hearsay. (Evid. Code, § 1200, subds. (a), (b).) However, "[e]vidence of a statement offered against a party is not inadmissible by the hearsay rule if the statement is one of which the party, with knowledge of the content thereof, has by words or other conduct manifested his adoption or his belief in its truth." (Evid. Code, § 1221.)

> " ' "Under this provision, '[i]f a person is accused of having committed a crime, under circumstances which fairly afford him an opportunity to hear, understand, and to reply, and which do not lend themselves to an inference that he was relying on the right of silence guaranteed by the Fifth Amendment to the United States Constitution, and he fails to speak, or he makes an evasive or equivocal reply, both the accusatory statement and the fact of silence or equivocation may be offered as an implied or adoptive admission of guilt.' " ' " (*People v. Armstrong* (2019) 6 Cal.5th 735, 789–790 (*Armstrong*).)

" 'In determining whether a statement is admissible as an adoptive admission, a trial court must first decide whether there is evidence sufficient to sustain a finding that: (a) the defendant heard and understood the statement under circumstances that normally would call for a response; and (b) by words or conduct, the defendant adopted the statement as true.' " (*People v. Charles* (2015) 61 Cal.4th 308, 322–323.)

> " 'For the adoptive admission exception to the hearsay rule to apply, no "direct accusation in so many words" is necessary. [Citation.] Rather, it is enough that the evidence showed that the defendant participated in a

14.

private conversation in which the crime was discussed and the circumstances offered him the opportunity to deny responsibility or otherwise disassociate himself from the crime, but that he did not do so.' " (*People v. Charles*, *supra*, 61 Cal.4th at p. 323.)

" '[O]nce the defendant has expressly or impliedly adopted the statements of another, the statements become *his own admissions* .… [Citation.] Being deemed the defendant's own admissions, we are no longer concerned with the veracity or credibility of the original declarant.' " (*People v. Combs* (2004) 34 Cal.4th 821, 842, italics in original.)

"We note that a trial court has broad discretion to determine whether a party has established the foundational requirements for a hearsay exception [citation] and '[a] ruling on the admissibility of evidence implies whatever finding of fact is prerequisite thereto .…' (Evid. Code, § 402, subd. (c).)" (*People v. DeHoyos* (2013) 57 Cal.4th 79, 132.) " ' "To warrant admissibility, it is sufficient that the evidence supports a reasonable inference that an accusatory statement was made under circumstances affording a fair opportunity to deny the accusation; whether defendant's conduct actually constituted an adoptive admission becomes a question for the jury to decide." [Citations.]' " (*People v. Zavala* (2008) 168 Cal.App.4th 772, 779.) "We review the trial court's conclusions regarding foundational facts for substantial evidence … [and] [w]e review the trial court's ultimate ruling for an abuse of discretion [citations], reversing only if ' "the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*DeHoyos*, at p. 132.)

### C.     Analysis

#### i.     The Trial Court Properly Admitted Campos's Statement as an Adoptive Admission.

For example, in *Armstrong*, the defendant was convicted of kidnapping, robbing, raping, torturing, and murdering a woman. (*Armstrong*, *supra*, 6 Cal.5th at pp. 744, 748.) After the crime, the defendant was watching television with Kendrick, Pearson, and a

third individual when a news report about the murder came on air. (*Id*. at p. 789.) "Kendrick said, 'Oh, I know who did that. [¶] … [¶] Killer Kev [Kevin Pearson] did it.' [The defendant] whispered to Pearson, 'How did [Kendrick] know?' Pearson then recounted details of the crime, including that Hardy, [the defendant], and he had encountered a woman, raped her in the bushes, and then beat her with a stick. The People introduced a tape of Kendrick's January 1999 police interview, which included additional specifics from Pearson and Kendrick's conversation in [the defendant's presence]. [The defendant] sat silently throughout the discussion." (*Ibid*.)

The trial court admitted Kendrick's testimony over the defendant's objection. (*Armstrong*, *supra*, 6 Cal.5th at p. 789.) Our Supreme Court agreed with the trial court's ruling and held, "[The defendant] implied that Kendrick's accusation of Pearson was true when he asked, 'How did he know?' [The defendant] then did not challenge the recitation of events, instead sitting silently as Pearson recounted [the defendant's] participation in the crime. Kendrick's recitation of Pearson's statements fell within the adoptive admission exception to the hearsay rule." (*Id*. at p. 790.)

Additionally, in *People v. Tolbert* (1969) 70 Cal.2d 790, the defendant objected to prior statements regarding the murder weapon. (*Id*. at p. 805.) Specifically, a witness "testified that when defendant telephoned her after [the defendant's] arrest she told him that officers had found a gun in the bathroom of her house. She asked [the defendant] if he had put it there, and he said[,] 'Forget about it.' On other occasions she asked [the defendant], 'Was that your gun?' and he replied, 'Just forget about it.' " (*Ibid*.) The court concluded the statements were admissible as adoptive admissions because the "defendant's equivocal and evasive responses indicated acquiescence in the truth of the accusatory statement." (*Id*. at pp. 805–806.)

Similarly here, there was substantial evidence to conclude Campos's statement qualified as an adoptive admission exception to the hearsay rule. First, there was substantial evidence to support the trial court's finding defendant heard and understood

16.

Campos's incriminating statements. At the Evidence Code section 402 hearing, Zamarripa testified Campos motioned towards defendant and stated, " 'Ma'am, I'm sorry, ma'am. Me and him were in the apartment yesterday,' " while seated next to defendant in the patrol vehicle. Second, Campos's statement was sufficient to support an inference "that [the] accusatory statement was made under circumstances affording a fair opportunity to deny the accusation." (*People v. Zavala*, *supra*, 168 Cal.App.4th at p. 779.) The trial court could have concluded defendant had the opportunity but chose not to deny culpability after Campos incriminated both himself and defendant as to the August 5th burglary. Lastly, the trial court could have reasonably determined defendant adopted Campos's statement as true. Defendant chose not to remain silent, but rather responded, "Don't tell her that. They'll charge us with conspiracy. It's a felony," which could be understood as an admission that Campos's statement was indeed true. (*Armstrong*, *supra*, 6 Cal.5th at p. 790.) Defendant's "equivocal [and] evasive answer[] indicat[ed] a consciousness of guilt or acquiescence in the truth of the statements" and was intended to silence Campos to prevent criminal charges from being brought against them. (*People v. Tolbert*, *supra*, 70 Cal.2d at p. 805.) Accordingly, we conclude the trial court's admission of Campos's statement is supported by substantial evidence, which necessarily renders his instructional error claim moot and therefore we do not separately address it.[7] (See *People v. Mitchell* (2019) 7 Cal.5th 561, 583 ["In general, a trial court must give a requested jury instruction if there is substantial evidence in the record supporting such an instruction."].)

---

[7]  Defendant has also forfeited this issue by not objecting to the CALCRIM No. 357 instruction in the trial court. Defendant did not object to the instruction, but rather argued for additional language to be included with the instruction regarding his right to remain silent under the Fifth Amendment. (*People v. Campbell* (2020) 51 Cal.App.5th 463, 498 ["As a general rule, failure to object to an instruction forfeits the issue on appeal."].)

Nonetheless, defendant argues the statement in question does not meet the requirements for admissibility as an adoptive admission. Specifically, defendant contends his response infers a reliance on his right to remain silent guaranteed by the Fifth Amendment because defendant "was in effect telling … Campos that he should exercise his right to remain silent, as [defendant] had been doing because … Campos was incriminating them." We disagree. There is no basis for any inference that defendant's silence, or lack thereof, was based upon his Fifth Amendment right to remain silent. Defendant did *not* invoke his right to remain silent, but rather privately and voluntarily spoke with Campos while in the presence of Zamarripa.[8] (See *People v. Preston* (1973) 9 Cal.3d 308, 314 [holding there was no basis for any inference that the defendant's silence was based upon his Fifth Amendment right to silence because the statements "were voluntarily made, in a private conversation, in a private home, with only these four persons present"].)

"Nor does introduction of this testimony raise constitutional concerns. Adoptive admissions pose no problem under the Sixth Amendment of the United States Constitution and *Crawford v. Washington* (2004) 541 U.S. 36 because ' "[t]he 'witness' against the defendant is the defendant himself," ' notwithstanding that the words the defendant adoptively admitted were spoken by someone else. (*People v. Jennings* (2010) 50 Cal.4th 616, 662; see *People v. Cruz* (2008) 44 Cal.4th 636, 672–673; *People v. Roldan* (2005) 35 Cal.4th 646, 711, fn. 25.)" (*Armstrong*, *supra*, 6 Cal.5th at p. 790.) "The high court has never suggested that the *Crawford* rule bars admission of a

---

**8** Because we conclude there is no basis for any inference that defendant's silence was based upon his Fifth Amendment right to remain silent, we do not address defendant's separate claim that the trial court erred in denying trial counsel's request to modify the CALCRIM No. 357 instruction to include defendant's exercise of his right to remain silent. (See *People v. Moon* (2005) 37 Cal.4th 1, 30 ["[A] trial court may properly refuse an instruction offered by the defendant … if it is not supported by substantial evidence."].)

defendant's own statement." (*Ibid.*) Accordingly, because we conclude substantial evidence exists, the trial court did not abuse its discretion in admitting Campos's statement as an adoptive admission.

### ii.    Prejudice

Defendant contends that even if defendant's response could be reasonably viewed as an adoptive admission of Campos's incriminating statements, the trial court should have excluded the evidence under Evidence Code section 352 "because the … admitted statements were highly prejudicial and had little to no probative value." We disagree.

"The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) " '[A]ll evidence which tends to prove guilt is prejudicial or damaging to the defendant's case. The stronger the evidence, the more it is "prejudicial." The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and *which has very little effect on the issues*. In applying section 352, "prejudicial" is not synonymous with "damaging." ' " (*People v. Karis* (1988) 46 Cal.3d 612, 638, italics added.)

Here, as stated above, defendant's response to Campos's statement could reasonably be understood as adopting this statement as true. Campos's statement and defendant's response were highly probative of defendant's guilt related to the August 5th burglary. Campos's statement and defendant's response were corroborated by law enforcement locating Mexican pesos both inside the backpack and at defendant's parents' property. Paulina later identified these pesos as the same pesos taken on August 5th. Any danger of undue prejudice from admitting Campos's statement and defendant's response was reduced by the trial court instructing the jury with CALCRIM Nos. 357,

19.

358, and 359.**9** (See *People v. Pearson* (2013) 56 Cal.4th 393, 414 ["We presume that jurors understand and follow the court's instructions."].) Accordingly, the probative

**9** CALCRIM No. 357 states:

"If you conclude that someone made a statement outside of court that (accused the defendant of the crime/ [or] tended to connect the defendant with the commission of the crime) and the defendant did not deny it, you must decide whether each of the following is true:

"1. The statement was made to the defendant or made in (his/her) presence;
"2. The defendant heard and understood the statement;

"3. The defendant would, under all the circumstances, naturally have denied the statement if (he/she) thought it was not true;

AND

"4. The defendant could have denied it but did not.

"If you decide that all of these requirements have been met, you may conclude that the defendant admitted the statement was true.

"If you decide that any of these requirements has not been met, you must not consider either the statement of the defendant's response for any purpose.

"[You must not consider this evidence in determining the guilt of (the/any) other defendant[s].]"

CALCRIM No. 358 states:

"You have heard evidence that the defendant made [an] [oral] [and] [a] [written] statement[s] (before the trial/while the court was not in session). You must decide whether the defendant made any (such/of these) statement[s], in whole or in part. If you decide that the defendant made such [a] statement[s], consider the statement[s], along with all the other evidence, in reaching your verdict. It is up to you to decide how much importance to give to the statement[s].

"[Consider with caution any statement made by (the/a) defendant tending to show (his/her) guilt unless the statement was written or otherwise recorded.]"

value of Campos's statement and defendant's response were not substantially outweighed by any danger of undue prejudice.

Finally, even if the trial court erred in admitting Campos's statement and defendant's response, the error was harmless under either the *People v. Watson*, *supra*, 46 Cal.2d at p. 836 or *Chapman v. California*, *supra*, 386 U.S. at p. 24 standards. Campos's statement and defendant's response were *only* related to the alleged August 5th incident. The jury acquitted defendant of count 3, which was the only charge associated with the August 5th incident. Accordingly, even assuming the trial court erred in admitting the statements, defendant was not prejudiced by this error because the jury acquitted him of count 3.

## II.    The Receiving Stolen Property Conviction (Count 5)

Defendant further contends he was improperly convicted of receiving stolen property (§ 496, subd. (a), count 5) and petty theft (§ 488, count 6), both related to the

---

CALCRIM No. 359 states:

> "The defendant may not be convicted of any crime based on (his/her) out-of-court statement[s] alone. You may rely on the defendant's out-of-court statements to convict (him/her) only if you first conclude the other evidence shows that the charged crime [or a lesser included offense] was committed.

> "The other evidence may be slight and need only be enough to support a reasonable inference that a crime was committed.

> "This requirement of other evidence does not apply to proving the identity of the person who committed the crime [and the degree of the crime]. If other evidence shows that the charged crime [or a lesser included offense] was committed, the identity of the person who committed it [and the degree of the crime] may be proved by the defendant's statement[s] alone.

> "You may not convict the defendant unless the People have proved (his/her) guilt beyond a reasonable doubt."

21.

jumper cables.  The People concede error.  We accept the People's concession and dismiss defendant's conviction as to count 5.

## A.    Additional Factual Background

During closing argument, the prosecutor argued the following regarding receiving and stealing the jumper cables:

> "Receiving stolen property.  Okay.  There is two elements.  The defendant received or withheld from its owner or aided in concealing or withholding property that had been stolen and the defendant knew the property had been stolen.  Specifically, here we're talking about cables that were on [Paulina]'s door—doorstep.  The defendant took the property.  He had it, didn't have permission,  knew it was stolen, knew it was taken from [Paulina], and again as to the second element knew the property had been stolen straightforward.

> "… And then Count 5 is petty theft which is the instruction that we had already gone through previously.  The defendant took possession of the property owned by somebody else, talking about the cables.  Okay.  Without the owner's consent.  We knew [Paulina] didn't give any consent.  When he took the cables, he intended to deprive the owner permanently and he moved the property even a small distance.  We know he took it from the doorstep."

## B.    Applicable Law.

" 'A principal  in the actual theft of the property may be convicted pursuant to this section.  However, no person may be convicted both pursuant to this section and of the theft of the same property.' (§ 496[, subd.] (a), as amended by Stats. 1992, ch. 1146, § 1, p. 5374; see *People v. Allen* (1999) 21 Cal.4th 846, 857 .…)" (*People v. Ceja* (2010) 49 Cal.4th 1, 4.)  "The rule against dual convictions was originally a creature of the common law, founded on the notion that it is 'logically impossible  for a thief who has stolen an item of property to buy or receive that property from himself.' " (*Id*. at pp. 4–5.)  " '[T]heft or theft-related offenses and receiving stolen property are not *mutually* exclusive offenses; it is the theft or theft-related offense which has the preclusive  effect. Thus, if the defendant is found to be the thief he cannot be convicted of

22.

receiving the same property, and where he is so convicted it is the receiving conviction which is improper. For this reason it is always the receiving conviction which cannot stand, regardless whether it is the lesser or the greater offense.' " (*Id*. at p. 6.)

"[I]f one criminal act is charged, but the evidence tends to show the commission of more than one such act, '*either* the prosecution must elect the specific act relied upon to prove the charge to the jury, *or* the court must instruct the jury that it must unanimously agree that the defendant committed the same specific criminal act.' " (*People v. Napoles* (2002) 104 Cal.App.4th 108, 114.) "The prosecution can make an election by 'tying each specific count to specific criminal acts elicited from the victims' testimony'—typically in opening statement and/or closing argument." (*People v. Brown* (2017) 11 Cal.App.5th 332, 341.) "Under these principles, there is an implicit presumption that the jury will rely on the prosecution's election and, indeed, is bound by it. This does not violate the rule that the attorneys' remarks are not evidence … [rather] [t]he prosecutor is merely doing his or her job—urging the jurors to apply the law to the facts in a specific away so as to come to a specific verdict." (*Ibid*.)

Lastly, "[a] verdict should be read in light of the charging instrument and the plea entered by the defendant. [Citations.] Otherwise, as [our Supreme Court has] explained, 'the ordinary forms of verdict, "Guilty," "Guilty of manslaughter," etc. [citations] would be entirely without meaning; while, in connection with the information, they cannot be understood otherwise than as referring to the defendant and to the crime named in the information or indictment.' " (*People v. Paul* (1998) 18 Cal.4th 698, 706–707.)

### C.    Analysis

Here, the jury convicted defendant of both receiving stolen property (§ 496, subd. (a), count 5) and theft (§ 488, count 6). In the verdict form, the jury found defendant guilty of "[r]eceiving [s]tolen [p]roperty, as charged in the … [i]nformation" and "[p]etty [t]heft, as charged in the … [i]nformation." The information alleged "on or about and between August 5, 2020 and August 6, 2020 … [defendant,] did willfully and

23.

unlawfully buy, receive, conceal, sell, withhold, or aid in concealing, selling, or withholding property belong to: Paulina …, currency/license plate/cables, which had been stolen or obtained by extortion, knowing that said property had been stolen or obtained by extortion .…" (Capitalization omitted.) Moreover, the information alleged "on or about August 6, 2020 … [defendant,] did willfully and unlawfully steal, take, or carry away the personal property of another, to wit: Paulina .…" (Capitalization omitted.) As to the receiving stolen property charge, the information did not specify a single piece of property, but rather listed the property received as currency (Mexican pesos), a license plate, and cables. Additionally, as to the theft charge, the information did not specify the property taken.

As to the receiving stolen property conviction, the evidence supported two discrete acts, the taking of the Mexican pesos *and* the taking of the jumper cables, both of which could have occurred "on or about and between August 5, 2020 and August 6, 2020." (Capitalization omitted.) As to the theft charge, although the information is silent as to the specific property stolen, the evidence supported only the distinct act of taking the jumper cables on August 6th. The People argue, "The jury's verdict, when read in conjunction with the amended information and the evidence presented at trial, supports the finding that the basis for the receiving stolen property and the petty theft convictions were separate properties—the Mexican pesos and the jumper cables respectively." Although this is a reasonable interpretation, the verdict, information, and evidence are unclear. The jury could have found defendant guilty of only stealing and receiving the jumper cables. This conclusion is supported by the fact the jury acquitted defendant of burglarizing Paulina's apartment on August 5th, which would have been the only opportunity for him to steal the pesos.

The prosecutor's statements during closing argument, along with the trial court's instructions, or lack thereof, supports the conclusion the jury convicted defendant of only stealing and receiving the jumper cables. The prosecutor in closing argument stated,

24.

"Receiving stolen property … here we're talking about *cables* that were on [Paulina's] door—doorstep" … and "petty theft … [w]hen [defendant] took the *cables*, he intended to deprive the owner permanently and he moved the property even a small distance." (Italics added.) The prosecutor "elect[ed] the specific act relied upon to prove the charge to the jury," (*People v. Napoles*, *supra*, 104 Cal.App.4th at p. 114), and "there is an implicit presumption that the jury … rel[ied] on the prosecut[or]'s election" that the crimes committed were the single act of taking and receiving the jumper cables. (*People v. Brown*, *supra*, 11 Cal.App.5th at p. 341.) The trial court therefore did not instruct the jury it had to unanimously agree defendant committed the same criminal act because the prosecutor elected to pursue the single act of taking and receiving the stolen cables. (See *People v. Russo* (2001) 25 Cal.4th 1124, 1132 ["[C]ases have long held that when the evidence suggests more than one discrete crime, *either* the prosecution must elect among the crimes *or* the court must require the jury to agree on the same criminal act." (Italics added.)].) The prosecutor relied on the jumper cables as the basis for both the receiving stolen property and the petty theft charges and therefore the receiving stolen property charge (count 5) must be vacated. (*People v. Ceja*, *supra*, 49 Cal.4th at pp. 4, 6.)

## III.   Assembly Bill 518

Defendant further contends the recent enactment of Assembly Bill 518 requires this case to be remanded for the trial court to exercise its new discretion under amended section 654 to stay his punishment on conspiracy to commit residential burglary (count 2) rather than on attempted residential burglary (count 1). The People concede defendant is entitled to the benefit of the recent legislation and that remand is required. We therefore agree defendant is entitled to the retroactive benefits of Assembly Bill 518.

### A.   Applicable Law

Assembly Bill 518 amended section 654, subdivision (a), to provide: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be

25.

punished under more than one provision." (Stats. 2021, ch. 441, § 1, eff. Jan. 1, 2022.) Previously, "the sentencing court was required to impose the sentence that 'provides for the longest potential term of imprisonment' and stay execution of the other term. [Citation.] … [S]ection 654 now provides the trial court with discretion to impose and execute the sentence of either term, which could result in the trial court imposing and executing the shorter sentence rather than the longer sentence." (*People v. Mani* (2022) 74 Cal.App.5th 343, 379.)

Under the rule of *In re Estrada* (1965) 63 Cal.2d 740, " '[w]hen the Legislature has amended a statute to reduce the punishment for a particular criminal offense, we will assume, absent evidence to the contrary, that the Legislature intended the amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date.' " (*People v. Winn* (2020) 44 Cal.App.5th 859, 872.)

**B.    Analysis**

Here, the trial court imposed an aggravated six-year sentence on defendant's conspiracy to commit residential burglary conviction (count 2). The court imposed an aggravated three-year sentence on defendant's attempted residential burglary (count 1) arising from the same incident, but stayed the sentence pursuant to section 654.

Defendant's judgment is not yet final because his appeal is presently before us. (See *People v. Jennings* (2019) 42 Cal.App.5th 664, 682 ["For purposes of the *Estrada* rule, a judgment is not final so long as courts may provide a remedy on direct review."].) Moreover, nothing in Assembly Bill 518 suggests the Legislature intended the amendments apply prospectively only. Therefore, defendant is entitled to the benefit of Assembly Bill 518. (*People v. Sek* (2022) 74 Cal.App.5th 657, 673 ["Assembly Bill No. 518 … applies retroactively to defendants … whose convictions were not yet final when the law became effective January 1, 2022."].)

**IV.** **The "Nonparticipant Present" Allegation (§ 667.5, subdivision (c)(21)) Does Not Apply to Attempted First Degree Burglary.**

Lastly, defendant contends the trial court erred by allowing the People to amend count 1 (§§ 460, subd. (a), 664) to add a "nonparticipant present" allegation (§ 667.5, subd. (c)(21)) because section 667.5 does not apply to attempted violent felonies. The People concede error. We accept the People's concession and dismiss the "nonparticipant present" allegation from count 1.

**A.** **Applicable Law**

Section 667.5, subdivision (a) authorizes a sentence enhancement where a prior felony conviction and the new offense are "violent felonies specified in subdivision (c)." Subdivision (c)(21) specifies, "Any burglary of the first degree, as defined in subdivision (a) of Section 460, wherein it is charged and proved that another person, other than an accomplice, was present in the residence during the commission of the burglary." (§ 667.5, subd. (c)(21).) Section 460, subdivision (a), defines "[e]very burglary of an inhabited dwelling house" as burglary of the first degree.

"The plain meaning of section 667.5, subdivision (c)(21) is that a 'violent felony' is any first degree burglary where another person, not an accomplice, was present during the burglary's commission. The statute does not refer to attempted burglary, and except as specified, '[s]ection 667.5, subdivision (a), does not apply to attempts to commit the crimes referred to as violent felonies.' " (*People v. Bedolla* (2018) 28 Cal.App.5th 535, 541, quoting *People v. Ibarra* (1982) 134 Cal.App.3d 413, 425.)

**B.** **Analysis**

Here, count 1 was charged as attempted first degree burglary (§§ 460, subd. (a), 664). Subsequently, the trial court granted the People's requested to amend count 1 to allege the "nonparticipant present" allegation pursuant to section 667.5, subdivision (c)(21). The jury then convicted defendant of count 1 and found true the "nonparticipant present" allegation. Accordingly, the "nonparticipant present" allegation (§ 667.5,

27.

subd. (c)(21)) must be stricken because defendant was convicted of *attempted* first degree burglary, which is not a violent felony. (*People v. Bedolla*, *supra*, 28 Cal.App.5th at p. 541.)

## DISPOSITION

Defendant's sentence is vacated and this matter is remanded for resentencing. Defendant's conviction as to count 5 is dismissed and the "nonparticipant present" allegation is dismissed as to count 1. In all other respects, the judgment is affirmed.