Filed 11/15/23  P. v. Jackson CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B317684 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A968974) |
| v. | |
| LYNDELL TYRONE JACKSON et al., | |
| Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Stephen A. Marcus, Judge.  Affirmed.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant Lyndell Tyrone Jackson.

Waldemar D. Halka, under appointment by the Court of Appeal, for Defendant and Appellant Vincent Burks.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

This is an appeal from the denial of petitions for resentencing relief under Penal Code section 1172.6.[1]  In 1988, confederates of petitioners Lyndell Tyrone Jackson and Vincent Burks shot Latonjyia Stover and Jamee Finney to death.[2]  Respondent describes this case as "an apparent case of mistaken identity" because Stover and Finney were not connected to the drug dealer who cheated Jackson's and Burks' confederates in the drug transaction that was the catalyst for the murders.

In 1991, a jury convicted petitioners of, among other crimes, one count of the first degree murder of Stover and found true murder while kidnapping and multiple murder special circumstances.  The jury also convicted petitioners of one count of the second degree murder of Finney.  Petitioners sought resentencing of both murder convictions after the Legislature amended the definition of murder to eliminate the natural and probable consequences doctrine, circumscribe those who could be convicted of felony murder, and with the exception of felony murder, prohibit a murder conviction based on imputed malice.

With respect to the first degree murder of Stover, the resentencing court found both petitioners failed to establish a prima facie case of eligibility for resentencing.  We agree.  As a matter of law, the record of conviction shows that the jury

---

[1]  Undesignated statutory citations are to the Penal Code. As explained in our Discussion, part A, *post*, section 1172.6 originally was numbered 1170.95.  Except as necessary for historical accuracy, we refer to the statute by its current number of section 1172.6.

[2]  The resentencing court concluded petitioners were not the actual shooters.

2

concluded each petitioner intended to aid and abet the Stover murder. Because the record shows the jury found each petitioner intended to kill, petitioners cannot demonstrate that they " 'could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019' "—an element of a prima facie case for resentencing under section 1172.6. (*People v. Gentile* (2020) 10 Cal.5th 830, 847 (*Gentile*).)

With respect to the second degree murder conviction of Finney, the resentencing court held an order to show cause hearing (§ 1172.6, subd. (d)(3)) at which no party presented new evidence. The resentencing court found the People had demonstrated beyond a reasonable doubt that petitioners were guilty of murder under the current definition of murder. We agree. Petitioners' argument that the resentencing court applied the wrong standard of proof is not consistent with the record. We also reject Burks's challenge to the sufficiency of evidence supporting the resentencing court's conclusion that he aided and abetted the Finney murder with intent to kill.

With respect to the Finney murder, Jackson does not challenge the sufficiency of evidence to support the resentencing court's finding that he committed felony murder as defined by current law. Instead, he argues that the resentencing court could not rely on a felony murder theory based on kidnapping, which was not a qualifying underlying felony when he was convicted, without violating (1) the constitutional prohibition against ex post facto application of the law and placing him in double jeopardy, (2) his right to due process of law, and (3) principles of collateral estoppel and law of the case. None of these doctrines or constitutional prohibitions applies here

3

because a resentencing hearing is not a second prosecution but instead, an occasion for lenity, and the resentencing court did not relitigate his premeditated first degree murder acquittal.

In sum, we affirm the resentencing court's order denying Burks's and Jackson's petitions for resentencing.

## BACKGROUND

### 1.    *Procedural background*

In the appeal from the judgment of conviction,[3] we described the procedural background, which we now summarize. Co-defendants Vincent Burks, Deautri Cosslolo Denard, Lyndell Tyrone Jackson, Dayon Darren Lively, and John Jay Porter were convicted "by jury of kidnapping for ransom with bodily harm (count 1), first degree murder (count 9 [Stover]) and second degree murder (count 10 [Finney]) with multiple murder and murder while kidnapping special circumstances, shooting into an inhabited dwelling (count 11), and assault with a firearm (count 12, a lesser included crime of attempted murder)." (*People v. Denard et al.* (Oct. 12, 1995, B066109) [nonpub. opn.] at p. 2.) Before finding them guilty of the second degree murder of Finney, the jury found Jackson, Burks, Denard, Porter, and Lively not guilty of the first degree murder of Finney. The trial court instructed the jury that the special circumstances applied only to a first degree murder, and the jury found the murder while kidnapping and multiple murder special circumstances true with

---

[3] Section 1172.6, subdivision (d)(3) permits consideration of "the procedural history of the case recited in any prior appellate opinion."

4

respect to the first degree murder of Stover.[4]  The jury also convicted petitioners of kidnapping for ransom.

## 2.    *Evidence at defendants' 1991 trial*

The trial record comprises more than 100 reporters' transcripts.  We summarize only the evidence relevant to the issues on appeal.

### a.    *Events preceding the shooting*

The evidence showed that on May 9, 1988, Kelly Davis (also known as Kelly Timmons) brokered a drug deal between her friend John Porter and her former boyfriend Buford ("B.J.") Bates.  Unbeknownst to Davis, Bates substituted flour for cocaine.  When Porter and co-defendant Denard learned of the substitution, they forced Davis at gunpoint into the home of Porter's mother.  Davis unsuccessfully tried to reach Bates, and

---

[4] The jury did not convict another co-defendant, Meredith Carter, of murder but only of false imprisonment.  There were other charged crimes, which we described in our prior appeal:  "In addition to the crimes described above, Burks, Denard, Jackson, and Lively were tried for forcible oral copulation and 2 counts of forcible rape, all in concert, of Ms. [Davis] in the apartment (counts 2–4).  The jury was unable to reach verdicts on counts 2-4, which were dismissed.  The jury acquitted Burks and Denard of forcible oral copulation and rape of Ms. [Davis], in concert, in the apartment (counts 5–6).  The jury acquitted Lively of forcibly raping Ms. [Davis] in the apartment (count 7).  Before instructions and argument, the prosecution dismissed count 8, which charged all the defendants with conspiracy to commit murder, but argued the case on an uncharged conspiracy theory.  The jury also acquitted the five male defendants of premeditated attempted murder of Anthony Milner . . . (count 13.)" (*People v. Denard et al.*, *supra*, at p. 7.)

telephoned her brother, Roland Timmons, asking him to call Bates. Denard told Timmons that Davis could not leave until Bates returned the money from the cocaine purchase.

Denard called co-defendant Lively and reported what happened with the drug deal. Lively came to the house where Porter and Denard were holding Davis captive. Pointing a gun at Davis, Denard forced her into a beige Jeep, which Lively, Denard, and Porter also entered. Burks already was seated in the Jeep. Lively, Denard, Porter, and Burks transported Davis to an apartment, and about 10 minutes later, Jackson arrived at the apartment.

Denard asked Davis about B.J. Bates and his family, and she told Denard where B.J. Bates lived and the type of vehicle he drove. Davis also told Denard about Bates's sister—Nina Bates—and specifically that Nina drove a red Hyundai. Burks and Jackson were present in the apartment when Davis described B.J. and his sister Nina.

Porter and Burks left the apartment to purchase bullets and the two returned with 10 to 15 boxes of bullets. They put the boxes of bullets on the coffee table. Denard said that they should try to "find B.J." Then Burks, Porter, and Lively donned plastic gloves, wiped their guns, and each loaded a gun with bullets. Jackson did not have a gun. Lively said, "[A]ll about killing. That's right. We dangerous people. That's right. Got to do what we got to do to survive. That is our money. We got to go get our money." According to Davis, everyone agreed with Lively.

Denard passed out ski masks to Burks, Porter, and Lively, and Denard put a mask in his pocket. Denard announced they were going to find B.J. and "were going to kill him." Lively said,

6

"[G]oing to get the sister.  Kill the sister."  Burks, Porter, Denard, and Lively left the apartment.

### b.     Events in the apartment after Burks, Porter, Denard, and Lively leave

Prior to leaving, Denard asked Jackson and others at the apartment (including co-defendant Carter) to guard Davis.  Jackson remained in the apartment.  Jackson tied Davis's hands and feet together with a phone cord and put a paper bag over her head while telling her that she was seeing too much.

When Davis attempted to get the attention of a person outside the apartment through a window, Carter threw her to the floor and kicked her.  Jackson then grabbed Davis from the floor and pushed her against a wall causing her to hit her head.

### c.     The shootings of Stover and Finney

Shortly before the shooting, Stover and Finney were talking to a friend, who was outside, as Stover and Finney sat in Stover's red Pontiac LeMans.  They noticed two Jeeps, one blue and the other beige, traveling in one direction.  The Jeeps were traveling fast but slowed down, and the drivers of both Jeeps looked at Stover and Finney.  The drivers were wearing black beanie caps, black jackets, and dark black glasses.  Stover told her friend to "get home and go in the house, somebody is about to get gatted."  Stover and Finney then drove away. Two to three minutes later, the blue Jeep passed the same spot traveling in the opposite direction.  The beige Jeep later followed.

After seeing the Jeeps pass the second time, Stover's and Finney's friend heard gunshots.  The gunshots lasted about 15 or 20 seconds and came from different guns.  Stover and Finney were seated in the red Pontiac at a stop sign.  Their car was still

running after the shooting. An eyewitness saw a blue vehicle skid away from the location of the shooting "real fast" followed by another vehicle, which the eyewitness described as a yellow Cadillac.

Another eyewitness observed the shooting from her home and saw a tan Wagoneer at the scene of the shooting. She saw the people inside the tan Wagoneer (which she also referred to as a Jeep), who were wearing a black beanie, black glasses, and black shirts.

Nina Bates also saw the blue and beige Jeeps before she heard gunshots. The Jeeps were in Nina Bates's neighborhood. One Jeep was right behind the other. She saw the occupants of the blue Jeep pull down ski masks. Nina was concerned and told her friends, "[T]here was some people in the neighborhood." Nina observed both Jeeps drive past her another time. Nina testified that her ex-boyfriend told her that he saw "the Jeeps that did it" in referring to the "girls" who were dead.[5]

A detective collected shell casings from two different guns at the scene of the shooting.

### d.    Events after the shooting

When Denard, Burks, Lively, and Porter returned to the apartment where Jackson had been guarding Davis, Denard said, "Oh, man, we shot them bitches. We got them bitches." "We got them bitches. We pumped the[m] full of lead." Denard said that the victims were in a red car. Denard referred to shooting Bates's

---

[5] It appears that exhibits at trial showed Nina Bates's location when she saw the jeeps. These exhibits are not included in the record before us. Nina Bates was not at the location of the shooting when it occurred, but she went there later that day.

8

sister. Burks called his mother and said, "Mama, you get out the house, we fixin' to go to jail, we just killed these two girls."

Afterwards, Denard said, "[W]e were following them, chasing them down St. Andrews, and we rammed them on the side of the car up into the corner of the street . . . . [a]nd they were hollering and screaming." Denard continued: "And we opened the . . . hatchback . . . and we just shot, we just came at them, bam, we just got them all at one time." Denard said that the victims "were hollering and screaming and moving to the left and moving to the right and jerking and trying to get away." Burks, Lively, Jackson, and Porter were present when Denard made these statements. Burks, Porter, and Lively returned their gloves to a plastic bag and put the bag in a closet.

Porter asked Jackson "what had happened" to Davis, and Jackson said that Davis "tried to get away" and "[w]e had to fuck her up."

### 3. *Instructions*

#### a. *Aiding and abetting*

The court instructed the jury that "[a] person aids and abets the commission or attempted commission of a crime when he or she, [¶] (1) with knowledge of the unlawful purpose of the perpetrator and [¶] (2) with the intent or purpose of committing, encouraging, or facilitating the commission of the crime, by act or advice aids, promotes, encourages or instigates the commission of the crime."

The court instructed the jury on natural and probable consequences as follows: "One who aids and abets is not only guilty of the particular crime that to his or her knowledge his or her confederates are contemplating committing, but he or she is

9

also liable for the natural and probable consequences of any criminal act that he or she knowingly and intentionally aided and abetted. You must determine whether the defendant is guilty of the crime originally contemplated, and, if so, whether the crimes charged were a natural and probable consequence of such originally contemplated crime."

The court further instructed the jury: "Merely assenting to or aiding or assisting in the commission of a crime without knowledge of the unlawful purpose of the perpetrator and without the intent or purpose of committing, encouraging or facilitating the commission of the crime is not criminal. Thus a person who assents to, or aids, or assists in, the commission of a crime without such knowledge and without such intent or purpose is not an aider and abettor in the commission of such crime."

### b. Conspiracy

The jury instruction on conspiracy provided in pertinent part: "A conspiracy is an agreement between two or more persons with the specific intent to agree to commit a public offense, and with the further specific intent to commit such offense, followed by an overt act . . . for the purpose of accomplishing the object of the agreement. Conspiracy is a crime, but is not charged as an offense in the information in this case." The court also instructed the jury: "A member of a conspiracy is not only guilty of the particular crime that to his or her knowledge his or her confederates are contemplating committing, but is also liable for the natural and probable consequences of any act of a co-conspirator to further the object of the conspiracy, even though such act was not intended as a part of the original

10

plan and even though he or she was not present at the time of the commission of such act.

### c. *Murder*

The court instructed that murder requires proof of the following elements: "1.  A human being was killed.  [¶]  2.  The killing was unlawful, and [¶]  3.  The killing was done with malice aforethought."  The court instructed the jury on express and implied malice.

For first degree murder, the jury was instructed on deliberate and premeditated murder.

With respect to second degree murder, the court instructed the jury on "unpremeditated murder of the second degree," "second degree murder [based on a] killing resulting from [an] unlawful act dangerous to life," second degree murder based on a conspiracy "to commit a felony inherently dangerous to human life," and second degree felony murder based on several underlying felonies including kidnapping.  (Boldface & capitalization omitted.)

### d. *Special circumstances*

The jury was instructed on three special circumstances— murder for financial gain, murder while kidnapping or kidnapping for ransom, and multiple murder convictions.  By way of introduction to these special circumstances, the court instructed the jury:  "If you find a defendant in this case guilty of murder of the first degree, you must then determine if one or more of the following special circumstances are true or not true: [¶]  1.  The murder was committed for financial gain; [¶]  2.  The murder was committed while the defendant was engaged in the

11

commission of the crime of Kidnapping for Ransom or Kidnapping; and [¶] 3. Multiple murder convictions."

The introductory instruction also provided: "If you find that a defendant was not the actual killer of a human being, or if you are unable to decide whether the defendant was the actual killer or an aider and abettor or co-conspirator, you cannot find the special circumstance to be true as to that defendant unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided and abetted, any actor in the commission of the murder in the first degree." The court further instructed the jury that the jury "must decide separately each special circumstance alleged in this case as to each defendant" and "must agree unanimously." Thus, the multiple murder special circumstance and murder while kidnapping special circumstance instructions required the jury to find the defendant was either the "actual killer" or "with the intent to kill, aided and abetted any actor in the commission of murder in the first degree."

### 4.    *Appeal from the judgment of conviction*

We affirmed petitioners' judgments of conviction. (*People v. Denard*, *supra*, B066109.) Rejecting petitioners' arguments to the contrary, we concluded sufficient evidence supported the jury's verdict that the murders occurred while defendants were engaged in kidnapping for ransom. (*Id*. at p. 11.) We held substantial evidence supported the kidnapping murder special circumstance. (*Id*. at p. 12.)

We rejected Jackson's argument that "because the other four male defendants did not announce they were going to kill Nina Bates as they left the apartment," he could not be liable for Stover's first degree murder. (*People v. Denard*, *supra*, B066109,

12

at p. 14.) We explained: Defendants "repeatedly threatened to kill Ms. [Davis], Bates, Bates' sister Nina, other Bates family members, Timmons [also known as Davis], and Timmons' [also known as Davis's] relatives. They announced upon their return that they had killed Nina Bates, although not by name. They made clear they would carry out their threats unless their demands were met. Substantial evidence supports the inference that Jackson shared these intents and his first degree murder conviction." (*Ibid*.)

### 5. *Jackson and Burks petition for resentencing and the resentencing court denies their petitions*

On January 14, 2019, Jackson filed a resentencing petition pursuant to former section 1170.95. On February 14, 2019, Burks filed a resentencing petition also pursuant to former section 1170.95. The judge hearing these petitions was not the trial judge. The court appointed counsel for petitioners and allowed briefing.

The resentencing court denied the petitions.[6] With respect to the Stover murder (count 9), the court found petitioners had failed to make a prima facie showing of eligibility for resentencing. Among other reasons, the court found the record of conviction showed petitioner directly aided and abetted with intent to kill.

With respect to the Finney murder (count 10), the resentencing court conducted a hearing at which no party presented new evidence. We now detail the court's findings from

---

[6] Appellants contend the resentencing court applied the wrong standard of proof in denying their petitions. We address this argument in our Discussion, part B, *post*.

that hearing. "[E]ach of the defendants aided and abetted the murder of the victim Jam[e]e Finney in their own individual ways." "The defendants repeatedly threatened to kill Ms. Timmons [also known as Davis], Bates, Bates['] sister, Nina, [and] other Bates family members . . . ." "They announced upon their return that they had killed Nina Bates, although not by name. "[T]here was testimony that both Jeeps were in the area of the shooting where Stover and Finney were killed." All four men in the Jeeps were aiding and abetting. "They're cutting off the car. They're chasing the car." Denard sent Burks and Porter to get ammunition. "[T]he reasonable inference is Burks and Porter got ammunition so that they could kill Nina Bates and members of her family." Lively and Denard made statements about killing in the presence of Burks and Jackson. The resentencing court indicated that Burks aided and abetted by purchasing the bullets. Prior to the killings, Denard announced that they were going to kill Bates, and the four men including Burks left the apartment armed. Among others, Burks called his mother and told her to avoid retaliation because they had killed Nina Bates.

The resentencing court noted the "weakest case is against Jackson because he's not one of the four people in the Jeeps hunting Nina Bates. However, he is there when they made the statements they're going to retaliate against Bates. He is there when the four armed defendants leave to carry out the mission, and he aids and abets the mission by guarding Timmons [also known as Davis]. It is the court's finding that he did have an intent to kill and that his role, although he was not present for the shooting, it still makes him subject to second degree murder, based on an aiding and abetting with the intent to kill."

14

With respect to Jackson, the resentencing court further explained: "Jackson stays behind in the apartment with Ms. Carter to guard Kelly Timmons [also known as Davis], to make sure she could not contact the police or her family or the Bates family to warn them of the impending attack. This is Jackson's conduct that aids and abets the murder of Ms. Finney. [¶] The plan to murder Nina Bates doesn't work without Jackson performing his role of watching and guarding Kelly Timmons [also known as Davis]. In fact, at one point Kelly Timmons [also known as Davis] tries to yell to somebody [on] the outside on the street, and they beat her unmercifully at that time." After the shootings, the petitioners bragged about killing Nina Bates.

The resentencing court also found Jackson and Burks could be convicted today of felony murder because they were major participants and acted with reckless indifference to human life. The court stated the defendants, including Burks and Jackson, could be convicted of conspiracy to commit murder as well. The court found petitioners were not the actual shooters; Denard and Porter were the shooters.

## DISCUSSION

### A.      The Resentencing Law

Prior to 2019, a jury could convict a defendant of murder under the felony-murder rule and the natural and probable consequences doctrine without finding malice. Under the felony-murder rule as it existed before 2019, malice was imputed if the defendant intended to commit the underlying qualifying felony. (*People v. Chun* (2009) 45 Cal.4th 1172, 1184 [" 'The felony-murder rule imputes the requisite malice for a murder conviction to those who commit a homicide during the perpetration of a

15

felony inherently dangerous to human life.' "].)  Under the natural and probable consequences doctrine, as it existed before 2019, an aider and abettor could be held liable for any offense that was the natural and probable consequence of the crime aided and abetted.  (*People v. Chiu* (2014) 59 Cal.4th 155, 158 [describing former law].)

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Stats. 2018, ch. 1015, §§ 2–4) modified the law relating to accomplice liability for murder, eliminating the natural and probable consequences doctrine as a murder theory (*Gentile, supra,* 10 Cal.5th at pp. 842–843), and more narrowly defining felony murder.  (*People v. Strong* (2022) 13 Cal.5th 698, 703 (*Strong*); §§ 188, subd. (a)(3), 189, subd. (e)(3)).  With respect to the former modification, "to amend the natural and probable consequences doctrine, Senate Bill 1437 added section 188, subdivision (a)(3) (section 188(a)(3)): 'Except [for felony-murder liability] as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime.' " (*Gentile*, at pp. 842–843.)

Senate Bill No. 1437 also added former section 1170.95 providing the procedure for a defendant convicted of felony murder or murder based on the natural and probable consequences doctrine to request resentencing relief.  (*Gentile, supra,* 10 Cal.5th at p. 843.)

Effective January 1, 2022, Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill No. 775) (Stats. 2021, ch. 551, § 2) amended section 1170.95.  In addition to convictions based on the natural consequences and felony murder doctrines, persons

16

convicted on a "theory under which malice is imputed to a person based solely on that person's participation in a crime" are eligible for resentencing relief.  (§ 1172.6, subd. (a); see also former § 1170.95, subd. (a).)  The bill clarified that persons convicted of attempted murder or manslaughter also may petition for resentencing.  (*People v. Whitson* (2022) 79 Cal.App.5th 22, 30.)  It further clarified that the burden of proof applicable in the evidentiary hearing is beyond a reasonable doubt.  (*People v. Owens* (2022) 78 Cal.App.5th 1015, 1020–1021.)  The Legislature then renumbered former section 1170.95 to section 1172.6 without substantive change.  (*Strong*, *supra*, 13 Cal.5th at p. 708, fn. 2, citing Stats. 2022, ch. 58, § 10.)

Section 1172.6 describes a multipart process for resentencing petitions.  The first step is making a prima facie case for relief.  "When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' [Citation.]  If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition."  (*Strong*, *supra*, 13 Cal.5th at p. 708.)  When evaluating a petition, the resentencing court may consider the record of conviction.  (*People v. Lewis* (2021) 11 Cal.5th 952, 972.)

If the petitioner makes a prima facie case for relief, the court must issue an order to show cause.  (§ 1172.6, subd. (c).)  "If there has been 'a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony, the court shall vacate the petitioner's conviction and resentence the petitioner.'

17

[Citation.] Additionally, the parties may stipulate that the petitioner is eligible for resentencing. [Citation.] Otherwise, the court must hold an evidentiary hearing at which the prosecution bears the burden of proving, 'beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder' under state law as amended by Senate Bill 1437. (§ 1172.6, subd. (d)(3).)" (*Strong*, *supra*, 13 Cal.5th at pp. 708–709.)

## B.     As a Matter of Law, Petitioners Are Ineligible for Resentencing Relief for the First Degree Murder of Stover

To recap, the resentencing court found petitioners failed to show a prima facie case of eligibility for resentencing on their first degree murder convictions for Stover's murder. Burks argues this was error because the instructions "allowed the jury to impute malice to Burks based on his participation in kidnapping for ransom, kidnapping, shooting at an inhabited dwelling, and/or discharging a firearm from a motor vehicle." He further argues the instructions on aiding and abetting and conspiracy did not clearly specify the required mens rea.

Burks implicitly argues that in addition to considering his mens rea, a prima facie case for resentencing relief requires the resentencing court to consider whether he committed the actus reus for murder and whether the instructions showed as a matter of law, that he committed a first degree premeditated murder. Jackson joins in Burks's arguments. We conclude none has merit.

### 1. *The requirements for a prima facie case*

Pursuant to section 1172.6, subdivision (a), a petitioner makes a prima facie case for resentencing when all of the following conditions apply:

"(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine.

"(2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder.

"(3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019."

Conversely, "[a] petitioner is ineligible for resentencing as a matter of law if the record of conviction conclusively establishes, with no factfinding, weighing of evidence, or credibility determinations," that among other things, "the petitioner acted with malice aforethought that was not imputed based solely on participation in a crime." (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14.) "Senate Bill 1437 relief is unavailable if the defendant was either the actual killer, acted with the intent to kill, or 'was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [Penal Code] Section 190.2.' [Citations.]" (*Strong, supra,* 13 Cal.5th at p. 710.)

19

**2.** ***Petitioners cannot establish a prima facie case because the jury's true findings regarding the murder special circumstances show, as a matter of law, they acted with intent to kill***

We review de novo the legal question whether petitioners are ineligible for relief as a matter of law. (*People v. Lopez, supra,* 78 Cal.App.5th at p. 14.)

Some of the 1991 jury instructions from Burks's and Jackson's trial would now be incorrect under the current definitions of murder described in part A of our Discussion, *ante.* Based on these instructions, Burks argues, with Jackson joining, that the jury could have convicted them under the natural and probable consequences doctrine (a no longer valid murder theory) and second degree felony murder (a crime that no longer exists and did not include all current elements of felony murder). We agree with Burks only insofar as he argues some instructions theoretically would have allowed the jury to impute malice based on his participation in other crimes.

We, however, do not address these instructions because the murder while kidnapping special circumstance instruction demonstrates that the jury necessarily found Burks and Jackson harbored express malice with respect to the Stover murder. The murder while kidnapping special circumstance instruction provided: "If you find that the defendant was not the actual killer of a human being, or if you are unable to decide whether the defendant was the actual killer, or an aider and abettor or co-conspirator, you cannot find the special circumstance to be true as to that defendant unless you are satisfied beyond a reasonable doubt that such defendant, *with the intent to kill,* aided and abetted any actor in the commission of murder in the

first degree." (Italics added.) The multiple murder special circumstance instruction contained the same language as above, including the italicized language.

Burks and Jackson were not the actual killers. The special circumstance instructions and the jury's true findings demonstrate the jury found Burks and Jackson intended to kill and were not convicted based on imputed malice but rather, express malice. Accordingly, petitioners have failed to establish a prima facie case for resentencing relief. (*People v. Estrada* (2022) 77 Cal.App.5th 941, 945 [petitioner was ineligible for relief where instructions showed that the jury found petitioner acted with intent to kill].)

*People v. Bentley* (2020) 55 Cal.App.5th 150 supports our conclusion. In *Bentley*, the jury found true a special circumstance allegation "that the murder 'was intentional and perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person . . . with the intent to inflict death.' [Citation.]" (*Id*. at p. 152.) The appellate court explained that "[w]hen the jury found the special circumstance allegation true with regard to appellant, it found that he aided and abetted the shooter 'with the intent to kill . . . .' [Citation.]" (*Id*. at p. 154.) The appellant thus could be convicted of murder under the current definition of murder. (*Ibid*.)

Although Burks argues, with Jackson joining, that the resentencing court should have reconsidered its conclusion in light of Senate Bill No. 775, which added convictions based on "a theory of imputed malice" to bases for resentencing, we have considered petitioners' eligibility de novo, taking into account the amended statute. Because petitioners are ineligible for relief

21

under the amended statute as well, there is no reason to remand for further proceedings.

### 3. *Petitioners' cited recent case law is inapposite to dispel the conclusion that the jury's true special circumstance findings are fatal to their petitions as to the Stover murder*

Petitioners rely on *People v. Pacheco* (2022) 76 Cal.App.5th 118 (*Pacheco*)[7] and *In re Lopez* (2023) 14 Cal.5th 562 (*Lopez*) to argue that the special circumstance instructions did not inform the jury of the actus reus of murder or of all the elements of *first degree* murder. Petitioners do not show the relevance of these arguments to the prima facie analysis of eligibility under section 1172.6, subdivision (a).

#### a. *Pacheco*

In *Pacheco*, the petitioner sought resentencing under section 1172.6. A jury had convicted him of first degree murder as an aider and abettor and attempted murder; the jury also found true a gang special circumstance. (*Pacheco*, *supra*, 76 Cal.App.5th at p. 121, review granted.) The trial court's

---

[7] "On May 18, 2022, our Supreme Court granted review in *Pacheco*, *supra*, 76 Cal.App.5th 118 (S274102) but has deferred further action pending disposition of *People v. Curiel* (Nov. 4, 2021, G058604 [nonpub. opn.]), review granted January 26, 2022, S272238 [lead case], which presents the following issue: 'Does a jury's true finding on a gang-murder special circumstance (Pen. Code, § 190.2, subd. (a)(22)) preclude a defendant from making a prima facie showing of eligibility for resentencing under Penal Code section [1172.6].' " (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1252, fn. 10.)

instruction as to the gang special circumstance provided: " 'The defendant is charged with the special circumstance of committing murder while an active participant in a criminal street gang . . . . [¶] To prove that this special circumstance is true, the People must prove that: [¶] 1. A *perpetrator* intentionally killed [the victim]; [¶] 2. At the time of the killing, *the defendant* was an active participant in a criminal street gang; [¶] 3. *The defendant* knew that members of the gang engage in or have engaged in a pattern of criminal gang activity; [¶] 4. The murder was carried out to further the activities of the criminal street gang; [¶] AND [¶] 5. *The defendant had the intent to kill at the time of the killing.*'" (*Id.* at pp. 127–128, review granted). The resentencing court found the petitioner had failed to make a prima facie case of eligibility for section 1172.6 relief because the jury found the gang special circumstance true and thus, that he had the intent to kill. The appellate court reversed.

The trial court had also instructed on the natural and probable consequences doctrine, and the prosecutor had argued that murder theory to the jury. Although the true gang special circumstance finding showed intent to kill, the appellate court reasoned the finding did not satisfy the actus reus element of murder because the jury could have found defendant guilty of aiding and abetting target crimes other than murder and then convicted petitioner of murder based on the now invalid natural and probable consequences doctrine. (*Pacheco, supra,* 76 Cal.App.5th at p. 128, review granted.) Because the instruction did not require a finding on the actus reus of murder, the court concluded the petitioner had demonstrated a prima facie case of eligibility for resentencing. (*Ibid.*, review granted.)

23

Assuming arguendo that *Pacheco* is correctly decided, it does not aid petitioners. Although the special circumstance instruction in *Pacheco* did not require a finding of aiding and abetting the murder, the special circumstance instruction in this case did (see Background, part 3.d & Discussion, part B.2, *ante*), and the record of conviction thus demonstrates petitioners were not convicted of Stover's murder based on any theory of imputed malice.

### b. *Lopez*

Burks relies on *Lopez*, *supra*, 14 Cal.5th 562 to argue the record of conviction does not demonstrate as a matter of law that the jury made all the necessary findings to support a conviction that he aided and abetted a *first degree* murder. *Lopez* did not involve a section 1172.6 resentencing petition. Instead, it involved the petitioner's claim in a habeas corpus petition that his conviction for aiding and abetting first degree murder was based on an instruction on the natural and probable consequences doctrine, which was invalid under *People v. Chiu* (2014) 59 Cal.4th 155. The petitioner further argued this instructional error was not harmless beyond a reasonable doubt. (*Lopez*, at p. 567.) The trial court agreed but the Court of Appeal reversed. It reasoned that the error was harmless because to find the gang murder special circumstance was true, the jury was required "to find that an aider and abettor acted with intent to kill" (*ibid.*), and there was " 'overwhelming' " evidence against the petitioner (*ibid.*).

The Supreme Court reversed and remanded to the Court of Appeal to address harmless error under the harmless error principles elucidated in the high court's opinion. (*Lopez*, *supra*, 14 Cal.5th at p. 592.) *Lopez* observed that the true finding on the

24

gang murder special circumstance did not cover all the elements of direct aiding and abetting a first degree murder: " 'An aider and abettor who knowingly and intentionally assists a confederate to kill someone could be found to have acted willfully, deliberately, and with premeditation, having formed his own culpable intent. Such an aider and abettor, then, acts with the mens rea required for first degree murder.' [Citation.]" (*Id*. at p. 579.) Because the latter true finding did not dispel the possibility that the jury convicted the petitioner of aiding and abetting a first degree murder based on a natural and probable consequences theory, the true finding did not necessarily render the *Chiu* error harmless.

*Lopez* supports that a special circumstance instruction requiring a showing of intent to kill (like the special circumstance instructions in this case) is not sufficient to support all the elements of *first degree* murder, for example, premeditation and deliberation. But that is not the inquiry section 1172.6 requires in evaluating a petitioner's prima facie case.

When evaluating Burks's and Jackson's prima facie case in their petitions, the resentencing court did not have to determine whether the jury necessarily found true all elements of *first degree* murder. Instead, the issue before the resentencing court was whether Burks and Jackson made a prima facie case that they were convicted under a now invalid theory of murder because of changes to sections 188 and 189. (§ 1172.6, subd. (a)(3); see also *People v. Gonzalez* (2023) 87 Cal.App.5th 869, 881 [holding that "[r]educing a first degree murder conviction to second degree murder is not an option under section 1172.6"].) Section 1172.6 does not provide resentencing relief to persons who acted with "malice aforethought that

25

was not imputed based solely on participation in a crime." (*People v. Lopez, supra*, 78 Cal.App.5th at p. 14.)  The special circumstance instructions here demonstrate that the jury necessarily found that petitioners acted with express malice, i.e., intent to kill, and not with imputed malice.[8]  That finding renders Burks and Jackson ineligible for resentencing relief under section 1172.6.

4.      ***The trial court applied the correct standard of proof at the section 1172.6, subdivision (d)(3) hearing***

Burks argues, with Jackson joining, that the court applied the wrong standard of proof at the order to show cause hearing.[9]  The record belies his argument.

Section 1172.6, subdivision (d)(3) requires the prosecution to prove "beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019."  It expressly rejects substantial evidence as the applicable burden:  "A finding that there is substantial evidence to support a conviction for murder . . . is insufficient to prove, *beyond a*

---

[8]  We agree with Burks insofar as he argues that the verdict forms, standing alone, do not show the jury found petitioners intended to kill.  The verdict forms did not expressly require the jury to state it found intent to kill.

[9]  There is no merit to respondent's argument that the issue is forfeited.  The parties discussed the correct standard of proof and the resentencing court explained that it was applying a beyond-the-reasonable-doubt standard of proof.

*reasonable doubt*, that the petitioner is ineligible for resentencing."  (§ 1172.6, subd. (d)(3), italics added.)

Here, the record demonstrates the resentencing court, acting as an independent factfinder, measured the evidence against the beyond-a-reasonable-doubt standard to determine whether petitioners were guilty of murder under current law. The court stated, "I just wanted to put on the record that that is the standard I am following, beyond a reasonable doubt, the *Rodriguez* standard.  It is clearly the right standard.  There was another standard that was discussed in *Duke*, and that has been rejected."  The prosecutor responded that she agreed with the standard and reminded the resentencing court that it had to review the record independently.

Burks fastens on to the resentencing court's reference to "could be convicted" during the order to show cause hearing to argue the court applied the wrong standard.  He takes the court's use of that phrase out of context.  For example, in responding to counsel for Jackson's argument that Jackson could not be convicted of second degree felony murder, the court stated, "The question is whether a valid murder theory exists today based on the facts in the case that your client could be convicted . . . ."  The resentencing court stated, "[The] evidence in this particular case is overwhelming that they could still be convicted, under any of these theories, of Ms. Finney's murder under current law."  The court stated that all petitioners "could be convicted today of a valid theory of murder . . . ."  The court found that the petitioners could be convicted of felony murder because felony murder now includes kidnapping.  In making these statements, the resentencing court was merely considering murder theories viable under current law, that is, theories of which petitioners

27

"could" still be convicted notwithstanding the changes to sections 188 and 189.

The record unequivocally reflects that the resentencing court applied the correct burden of proof and acted as an independent factfinder. The resentencing court evaluated the evidence and found it overwhelming. The court stated it was basing its decision on "the evidence presented at trial." The court referred to the witnesses at trial and found Davis's testimony credible. The court comprehensively summarized the evidence as presented at trial and highlighted the evidence the court believed supported its findings. As if this were not enough, the court stated it was applying a beyond-the-reasonable-doubt standard and rejecting the different standard in *People v. Duke* (2020) 269 Cal.Rptr.3d 264 that in Senate Bill No. 775, the Legislature also subsequently rejected. (See Discussion, part A, *ante*; § 1172.6, subd. (d)(3)).

Burks and Jackson again take the resentencing court's statements out of context in arguing that the court relied on facts recited in our opinion on their direct appeal instead of acting as an independent factfinder. Facts recited in an appellate opinion are not admissible in a section 1172.6 subdivision (d)(3) hearing. (*People v. Vance* (2023) 94 Cal.App.5th 706, 712–713.) The resentencing court, however, did not rely on facts recited in our prior opinion but instead, agreed with those facts in stating, the "language" of the appellate opinion is the same as the facts the court "read [in] the trial transcript." The court expressly indicated, the "appellate opinion" was not a "bible on what the facts are . . . ." The fact that the trial court commented that its view of the evidence was consistent with the facts recited in our

opinion does not demonstrate the court failed to act as an independent factfinder.

Burks argues the resentencing court relied on cases that are no longer good law, but he does not show the court relied on any principle of law no longer valid. In applying the beyond-a-reasonable-doubt standard of proof, the resentencing court cited *People v. Rodriguez* (2020) 272 Cal.Rptr.3d 342, depublished on December 22, 2021 (S266652) just before the order to show cause hearing. That standard of proof remains correct notwithstanding depublication of *Rodriguez*. (*People v. Gonzalez, supra,* 87 Cal.App.5th at p. 880.)

The resentencing court also relied on *People v. Hernandez* (2021) 60 Cal.App.5th 94 (*Hernandez*) to conclude "the kidnapping felony murder theory applies." We acknowledge *Hernandez*'s description of a two-part prima facie showing was abrogated in *People v. Lewis, supra,* 11 Cal.5th at pp. 961–965. We fail to discern what relevance *Hernandez*'s now defunct holding has to the issues in this appeal and Burks provides no cogent argument to the contrary.

## C.     Burks' Challenge to the Sufficiency of the Evidence To Support the Finding That He Aided and Abetted Finney's Murder Lacks Merit

Burks argues under current law, the prosecution failed to prove beyond a reasonable doubt that he was guilty of Finney's murder. He contends no substantial evidence supports the resentencing court's finding he aided and abetted that murder with intent to kill Nina Bates.

We review a resentencing court's denial of a section 1172.6 petition after an order to show cause hearing for substantial evidence. (*People v. Reyes* (2023) 14 Cal.5th 981, 988.) Under

29

this standard, we review the record " ' " 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' [Citation.]" (*Ibid*.)

"[U]nder direct aiding and abetting principles, an accomplice is guilty of an offense perpetrated by another if the accomplice aids the commission of that offense with 'knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends.' [Citation.]" (*Gentile*, *supra*, 10 Cal.5th at p. 843.) Burks correctly identifies the following factors in determining whether a defendant is an aider and abettor: presence at the scene of the crime, companionship, and conduct before or after the offense. (*People v. Campbell* (1994) 25 Cal.App.4th 402, 409.)

The evidence showed that before the killings, Burks purchased ammunition, cleaned off his gun, and armed himself. Burks was present in the apartment when his confederates discussed killing B.J. Bates and his sister Nina. Davis testified that when Lively said, "All about killing. That's right. We dangerous people," "everybody was kind of agreeing saying 'that's right, that's right. We got to go get our money back for our people.' " Lively also said, "[G]oing to get the sister. Kill the sister." Denard specifically asked Davis questions about Bates's family including Nina. Davis provided details including that Bates's sister drove a red Hyundai.

Burks wore a ski mask and carried a loaded firearm as he accompanied Denard, Lively, and Porter to the scene of the shooting. Burks was with his confederates when they spotted

30

Stover's red car, and then turned around and drove in the opposite direction. One eyewitness placed Burks in the blue Jeep. Another eyewitness saw the beige Jeep (which she thought was tan) at the scene of the shooting. Regardless of which Jeep he was in, Burks was present at the Finney shooting.

After killing Finney, Denard said the victims (Stover and Finney) were in a red car. Denard also told co-defendant Carter to move Denard's mother because he shot B.J.'s sister and was concerned about retaliation. Denard referred to Nina, stating, "[W]e got that bitch. We pumped her full of lead." Burks confirmed his participation in the murder when he admitted to his mother, "[W]e just killed these two girls."

Burks's attack on the sufficiency of the evidence does not consider the evidence in the light most favorable to the resentencing court's order. He incorrectly states that "[n]o witness placed Burks inside the blue Jeep." He incorrectly states that a reasonable trier of fact could not infer Burks agreed with Lively's statements about killing to get the drug money back when Burks purchased bullets, loaded a gun, put on a ski mask, and accompanied his confederates to the killing. Burks incorrectly states that "no one said anything about killing Nina." Burks argues he did not have a motive to kill Nina, but there was evidence that Burks and his co-defendants wanted to kill Nina to exact revenge on her brother, B.J. Bates, for selling them flour instead of cocaine. Burks minimizes his admission that "we killed two girls" when he argues the admission does not show his intent prior to the killing. Regardless of whether that statement by itself shows his intent prior to the killing, Burks's conduct prior to the shootings supports the inference that Burks aided and abetted the murder with intent to kill. Finally, Burks's

31

statement that he did not aid and abet the killings ignores the evidence that he purchased ammunition.

Because Burks demonstrates no error in the resentencing court's finding that he aided and abetted Finney's murder with intent to kill, we do not consider whether the trial court erred in finding Burks was guilty of murder under a valid felony murder or conspiracy theory.

## D. Jackson Demonstrates No Error in the Resentencing Court's Finding That He Was Guilty of the Felony Murder of Finney Under Current Law

Under current law, felony murder is a theory of first degree murder. (§ 189, subd. (a).) Jackson does not challenge the sufficiency of the evidence to support his murder conviction of Finney under a felony murder theory. Instead, he argues, that as a matter of law, the resentencing court could not rely on a felony murder theory without violating (1) the constitutional prohibitions against ex post facto application of the law and placing him in double jeopardy, (2) his right to due process of law, and (3) principles of collateral estoppel and law of the case. We address these arguments seriatim.[10]

---

[10] Respondent argues Jackson forfeited these contentions by not raising them in the resentencing court. Without deciding that issue, we exercise our discretion to consider Jackson's contentions. (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 [an appellate court generally has discretion to consider unpreserved claims].) Additionally, Jackson's counsel briefly raised violation of ex post facto and double jeopardy principles at the resentencing hearing.

32

### 1. *No ex post facto violation*

Jackson contends the ex post facto clause of the federal and California Constitutions (U.S. Const. art. I, § 10; Cal. Const. art. I, § 9) precludes conviction of Finney's murder on a felony murder theory because kidnapping was not a qualifying underlying felony for first degree felony murder in 1988, when the killing occurred.

The ex post facto clauses in our state and federal Constitutions prohibit " ' "any statute [1] which punishes as a crime an act previously committed, which was innocent when done; [2] which makes more burdensome the punishment for a crime, after its commission, or [3] which deprives one charged with crime of any defense available according to law at the time when the act was committed . . . ." ' [Citation.]" (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 294, quoting *Collins v. Youngblood* (1990) 497 U.S. 37, 42.) The ex post facto clause of the state Constitution is coextensive with its federal counterpart. (*Tapia*, at pp. 295–296.)

"The standard for determining whether a law violates the ex post facto clause has two components, 'a law must be retrospective—that is, "it must apply to events occurring before its enactment"—and it "must disadvantage the offender affected by it" . . . by altering the definition of criminal conduct or increasing the punishment for the crime . . . .' [Citation.]" (*People v. Delgado* (2006) 140 Cal.App.4th 1157, 1164.) "A party asserting an ex post facto claim has the ultimate burden of establishing that the measure of the punishment itself has

changed." (*Id.* at p. 1166.) Jackson does not disagree with these principles.[11]

Jackson is correct only insofar as he argues that in 1988, kidnapping was not included in section 189, which defined first degree felony murder.[12] At that time, murder during the course of a kidnapping supported a second degree felony murder conviction. *People v. Pearch* (1991) 229 Cal.App.3d 1282 explained the former offense of second degree murder: "Second degree felony murder is defined as: 'A homicide that is a direct causal result of the commission of a felony inherently dangerous to human life (other than the . . . felonies enumerated in Pen. Code, § 189) . . . .' [Citation.]" (*Pearch*, at p. 1296.) Kidnapping fell withing the definition of a felony inherently dangerous to human life (*id.* at p. 1298), and the trial court here

---

[11] Quoting *People v. Smith* (1983) 34 Cal.3d 251, 259, Jackson describes an ex post facto law as follows: "[F]or a law to be ex post facto 'it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it.' [Citation.] The latter phrase plainly includes any law that punishes as criminal an act that was innocent when done, or increases the punishment for a crime after it was committed."

[12] In 1988, section 189 provided: "All murder which is perpetrated by means of a destructive device or explosive, knowing use of ammunition designed primarily to penetrate metal or armor, poison, lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing, or which is committed in the perpetration of, or attempt to perpetrate, arson, rape, robbery, burglary, mayhem, or any act punishable under Section 288, is murder of the first degree; and all other kinds of murders are of the second degree."

instructed the jury on second degree felony murder based on kidnapping.[13]

Jackson's conduct was thus not innocent when he committed it; his conduct was inherently dangerous to human life and when he was tried, it supported a second degree murder conviction. As significant, a resentencing petition under section 1172.6 cannot result in increasing Jackson's punishment, but only in decreasing his sentence had it been successful. Jackson has thus failed to show a violation of the ex post facto clauses in our state and federal Constitutions.

### 2. *No double jeopardy violation*

Jackson has also failed to demonstrate a violation of the double jeopardy prohibition in the Fifth Amendment to the United States Constitution and in Article I, section 15 of the California Constitution. " 'At its core, the double jeopardy clause "protect[s] an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." [Citation.] The policy underlying the double jeopardy

---

[13] The court instructed the jury on second degree felony murder as follows: "If a human being is killed by any one of several persons engaged in the commission of the crime of Kidnapping for Ransom, Kidnapping, or Shooting at an inhabited Dwelling, *felonies inherently dangerous to human life*, all persons, who either directly and actively commit the act constituting such crime, or who with knowledge of the unlawful purpose of the perpetrator of the crime and with the intent or purpose of committing, encouraging, or facilitating the commission of the offense, aid, promote, encourage, or instigate by act or advice its commission, are guilty of murder of the second degree, whether the killing is intentional, unintentional, or accidental." (Italics added.)

protection "is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual . . . thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity." [Citation.]' [Citation.]" (*People v. Wilson* (2023) 14 Cal.5th 839, 852.)

A defendant seeking resentencing is not being prosecuted for an offense and thus, principles of double jeopardy do not apply to section 1172.6 resentencing petitions. (*People v. Mitchell* (2022) 81 Cal.App.5th 575, 589.) As *Mitchell* explains: "A petition under former section 1170.95 is . . . . is the *opposite* of a criminal prosecution. A criminal prosecution can only hurt a defendant and can never help. The process here is the reverse: it can only help the defendant and can never hurt." (*Mitchell*, at p. 588; accord, *Hernandez*, *supra*, 60 Cal.App.5th at p. 111 [defendant petitioning for resentencing is not being placed in jeopardy for an offense].) Resentencing is a voluntary process commenced by a criminal defendant seeking a reduced sentence. The resentencing court is not determining guilt but instead is determining eligibility for resentencing. (*People v. Njoku* (2023) 95 Cal.App.5th 27, 45–46.) The resentencing court's denial of Jackson's petition merely made him ineligible for a decreased sentence; it did not place Jackson in jeopardy for any offense. (*Mitchell*, at p. 589 [double jeopardy principles do not apply in section 1172.6 proceedings.])

3.     ***Doctrines of collateral estoppel and law of the case do not benefit Jackson because no issue is being relitigated***

Adopting Burks's argument, Jackson asserts that the doctrine of collateral estoppel "bars relitigation of previously

36

determined issues." Jackson makes a similar claim with respect to the doctrine of law of the case in stating that he was "acquitted" of first degree murder and the second degree murder conviction was affirmed on appeal and cannot be relitigated.

"The rule of collateral estoppel—'embodied' in the double jeopardy clause and 'extremely important' to the criminal justice system—requires 'that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.' [Citation.]" (*People v. Zavala* (2008) 168 Cal.App.4th 772, 776–777.) For collateral estoppel to apply, "First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.' [Citation.]" (*People v. Arnold* (2023) 93 Cal.App.5th 376, 386.) Law of the case applies only when an appellate court has issued a written opinion demonstrating a full consideration of the issue on the merits and may be "declined" if " ' "its application will result in an unjust decision." ' [Citation.]" (*People v. Saucedo* (1974) 42 Cal.App.3d 905, 907.)

We need not decide if collateral estoppel or law of the case would apply to a section 1172.6 proceeding because Jackson identifies no allegation the jury resolved in his favor that the resentencing court relitigated. Jackson also identifies no issue resolved in Jackson's favor in the prior appeal that the resentencing court relitigated.

37

Under the instructions given at Jackson's trial, the only theory of first degree murder proffered to the jury was murder by premeditation and deliberation. The resentencing court noted this, and Jackson emphasizes the resentencing "court's observation that premeditation and deliberation were absent in relation to the Finney murder." When it concluded that Jackson was guilty of felony murder under current law, the resentencing court did not rely on the theory of first degree murder that the jury rejected, i.e., premeditation and deliberation.

Under current law, a defendant can be liable for felony murder if the defendant was a " 'major participant[ ] in the underlying felony and acted with reckless indifference to human life . . . .' [Citation.]" (*Strong*, *supra*, 13 Cal.5th at p. 708.) Jackson identifies no element of felony murder under current law on which the jury acquitted him or on which this court decided in his favor in the appeal from the judgment of conviction.

*People v. Cooper* (2022) 77 Cal.App.5th 393 helps illustrate this hole in Jackson's argument. *Cooper* holds that a resentencing court, which stands as a trier of fact at a section 1172.6, subdivision (d)(3) hearing, cannot deny relief based on a finding "inconsistent with a previous acquittal when no [relevant] evidence other than that introduced at trial is presented." (*Cooper*, at p. 398.) At trial, the parties stipulated Cooper was a felon. (*Id*. at pp. 397, 399.) The jury found Cooper guilty of first degree murder and kidnapping but acquitted him of being a felon in possession of a firearm. (*Id*. at pp. 397, 399.) There was no new evidence at the resentencing hearing. In supporting its finding that Cooper was guilty of felony murder, the resentencing court found Cooper possessed and fired a gun. (*Id*. at p. 398.) The appellate court reversed, concluding the

38

resentencing court erred in relying on a fact that necessarily " 'turn[ed]' " a not-true enhancement finding " 'into [its] opposite[ ].' [Citations.]" (*Id.* at p. 413; see also *People v. Henley* (2022) 85 Cal.App.5th 1003, 1019 [following *Cooper*].) Here, Jackson identifies no finding that the resentencing court turned into its opposite. The resentencing court did not rely on premeditation and deliberation, the only theory of first degree murder presented to the jury. Instead, the resentencing court relied on felony murder under current law.

Finally, Jackson argues that the resentencing court erred in relying on *Hernandez*, *supra*, 60 Cal.App.5th 94. We fail to discern any such error. *Hernandez* supports the conclusion that in considering a resentencing petition, the resentencing court could find Jackson guilty of first degree felony murder under current murder law even though he could be convicted only of second degree murder at the time of his trial.

*Hernandez* considered whether under current law, the People had to prove malice aforethought in the murder of a peace officer. *Hernandez* concluded current murder law did not require such a finding. (*Hernandez*, *supra*, 60 Cal.App.5th at p. 105.) It also held the fact that on direct appeal and based on since abrogated law, the appellate court reduced petitioner's conviction to second degree was "not relevant to the analysis." (*Id.* at p. 110.) In so concluding, *Hernandez* rejected defendant's challenge based on the doctrine of law of the case and the double jeopardy clause. (*Id.* at pp.110–111.) It reasoned intervening changes in the law precluded concluding the appellate court's prior opinion was law of the case (*id.* at pp. 110–111) and the resentencing statute does not constitute a new prosecution but

39

instead, only provides an act of lenity that does not raise double jeopardy concerns (*id.* at p. 111).

Similarly here, under current law, Jackson could be convicted of first degree felony murder based on kidnapping. Just as in *Hernandez,* the fact that kidnapping supported only a second degree felony murder at the time Jackson committed his offense is not relevant to whether he could be convicted of first degree felony murder now.

### 4. *Jackson fails to demonstrate a violation of his right to due process*

Jackson argues that "subjecting [him] to a second proceeding at which the prosecution has the opportunity to establish guilt for an offense of which [he] was acquitted at trial violates the doctrine of fundamental fairness, as incorporated in the due process clause of the federal and state Constitutions. It is unfair to give the prosecution a second opportunity to prove an allegation where it failed to carry its burden of proof during the jury trial."

Jackson's argument is based on false premises. The People did not subject Jackson to a second criminal prosecution. Instead, Jackson filed a petition for resentencing seeking to take advantage of a new definition of murder in the hope of reducing his sentence. Although Jackson purports to challenge the prosecution's proof of an allegation that the prosecution previously "failed to carry its burden of proof," Jackson identifies no allegation the jury found untrue. The jury did not acquit Jackson of felony murder; it acquitted him of premeditated murder—the only theory of first degree murder presented to the jury. In short, Jackson fails to identify any allegation the prosecution did not prove in the first trial that the prosecution

40

had a second opportunity to prove at the order to show cause hearing.[14]

## DISPOSITION

The order denying Lyndell Tyrone Jackson's resentencing petition is affirmed. The order denying Vincent Burks's resentencing petition is affirmed.

<u>NOT TO BE PUBLISHED.</u>

BENDIX, Acting P. J.

We concur:

CHANEY, J.

WEINGART, J.

---

[14] Given our holding that Jackson could be convicted of first degree felony murder of Finney based on kidnapping, we do not address his challenges to the resentencing court's other findings, i.e., aiding and abetting with intent to kill and conspiracy.

41